**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **CITY OF NORFOLK, VIRGINIA, and** ) | |
| **NORFOLK CITY COUNCIL** ) | |
| ) | |
|    **Plaintiffs,** ) | |
| ) | |
|    **v.** ) | **Civil Action No. _____** |
| ) | |
| **COMMONWEALTH OF VIRGINIA,** ) | |
| **GREGORY D.  UNDERWOOD,** ) | |
|    **COMMONWEALTH'S ATTORNEY** ) | |
|    **for the CITY OF NORFOLK,** ) | |
|    **in his official capacity, and** ) | |
| **MARK R. HERRING,** ) | |
|    **ATTORNEY GENERAL for the** ) | |
|    **COMMONWEALTH OF VIRGINIA,** ) | |
|    **in his official capacity,** ) | |
| ) | |
|    **Defendants.** ) | |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Come now the Plaintiffs, the City of Norfolk and the City Council for the City of Norfolk,

by counsel, to request injunctive and declaratory relief, upon the following grounds:

1.      Not unlike many other cities that were, for just over four years during the

Nineteenth Century, part of the Confederate States of America, the City of Norfolk (hereinafter

"City") maintains a sculptural monument commemorating soldiers who died fighting for the

Confederacy, which is on display to the public (hereinafter "Monument").  Unlike other cities,

Norfolk's Monument has a specific connection to the City, is owned by the City, and presents its

message of remembrance exclusively to viewers living, working, staying, traveling and touring in

Norfolk.

2.     The Commonwealth of Virginia (hereinafter "Commonwealth") has enacted legislation that purports to protect memorials related to wars and battles such as the Monument but does so in a way that takes away fundamental rights that belong to the City and its City Council. The statutes that are challenged by this lawsuit force the City to keep the Monument where it is, to make no adjustments or enhancements whatsoever to the Monument, to suffer the interference of any citizen who seeks to tamper with the Monument under the premise that they are "protecting" it, and to continue to maintain the same message in the same location in perpetuity.

3.     The purpose of this suit is to unbuckle the straitjacket that the Commonwealth has placed the City and the City Council in.  Because the Monument is the City's speech, the City has a constitutional right to alter that speech, a right that the Commonwealth cannot take away. Because the Monument is City property, the City has a constitutional right to control who can tamper with it and a constitutional right to move it from where it now stands in the center of a public street, rights that the Commonwealth cannot take away.  The only way to protect these free speech rights and property rights from being unlawfully impaired is to declare that the statutes that force the City and the City Council to maintain the Monument in its current form in its current location forever are void and unenforceable.

**JURISDICTION AND VENUE**

4.     This lawsuit is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, Article I § 12 of the Constitution of Virginia, and 42 U.S.C. § 1983.

5.     The City and its City Council seek declaratory relief stating that the statutes challenged hereby violate their constitutional rights and are unconstitutional and, furthermore, seek injunctive relief barring the Commonwealth, the Commonwealth's Attorney for the City of

Norfolk, the Attorney General, and any other person from attempting to enforce the provisions of any of the statutes challenged hereby.

6.     This Court has both original jurisdiction and supplemental jurisdiction of this matter because the state law claims involve the same case or controversy as the federal law claims, pursuant to 28 U.S.C. §§ 1331 and 1367(a).

## THE PARTIES

7.     The City of Norfolk is a body politic established by law, with perpetual succession, located within the boundaries set forth in its Charter adopted by the General Assembly of the Commonwealth of Virginia.  It is a political subdivision of the Commonwealth of Virginia and is also recognized as a "Person" under Virginia Law in all instances, unless expressly excepted, pursuant to Virginia Code § 1-230.  The City is the owner of the Monument.

8.     The City Council is the legislative body of the City and is endowed with all power and authority, except as otherwise provided in the City's Charter, to exercise all of the powers conferred upon the City.  The City Council is a continuing body that has, during its history, appropriated funds to contribute to the cost of the construction and installation of the Monument, accepted the dedication of the Monument to the possession of the City, and expressed its desire to relocate it to a public cemetery.

9.     The Commonwealth of Virginia is a sovereign state of the United States with separate legislative, executive, and judicial departments.  Its legislative department holds all of the Commonwealth's legislative power, which is vested in a General Assembly.  The General Assembly maintains the power to enact all laws for the Commonwealth and may, by enacting a general law or special act, provide that any county, city, town, or other unit of government may exercise any of the Commonwealth's powers.

10.     Gregory D. Underwood is the elected Commonwealth's Attorney for the City of Norfolk and, in his official capacity as such, has the duty to prosecute all warrants, indictments or informations charging a felony.

11.     Mark R. Herring is the elected Attorney General for the Commonwealth of Virginia and, in his official capacity as such, is required to represent the interests of the Commonwealth in matters before the government of the United States, including this lawsuit.  He is also required to provide all legal service in civil matters for the Commonwealth, including conducting all civil litigation in which the Commonwealth is interested.

**THE MONUMENT**

12.     The Monument consists of a stone base, a column-shaped pedestal, relief carvings, and a statue depicting a soldier of the former Confederate army holding a battle standard in one hand and a short saber in the other.  On the south side of the Monument's base is a copy of the seal of the former Confederacy with the words, "The Confederate States of America, 22 February 1862."  On the north side of the Monument's base is an inscription that reads, "Our Confederate Dead" and "1861-1865," being the starting and ending years for the War Between the States.

13.     The Monument was erected and dedicated in 1907 and the Norfolk City Council appropriated funds to contribute to the cost of its construction and installation.  It is owned by the City and is situated on property that the Norfolk City Council has opened for use by the public as a public right-of-way in a prominent, highly-visible location in the city's densely-populated, downtown business district, at the intersection of East Main Street and Commercial Place.  This area is frequented by residents, businesspeople, visitors, and tourists and is located one block south of the City's MacArthur Memorial Museum, which includes the final resting place of General

Douglas MacArthur.  These two sites are connected by a public park which is also regularly frequented by residents, businesspeople, visitors, and tourists.

14.     The Monument is a form of expressive speech with a message related to the War Between the States and includes a Confederate marking.  The expressive speech and message projected by the Monument is generally understood to be the City of Norfolk's speech and message.

## THE VIRGINIA STATUTES

15.     Virginia Code § 15.2-1812 (hereinafter "the Protection Statute") was adopted by the Virginia General Assembly and sets forth provisions and protections mandated by the Commonwealth. The Protection Statute describes and imposes the Commonwealth's preference for protecting speech and messages embodied in war and battle memorials, including the speech and message projected by the Monument.

16.     The Protection Statute prevents any person and any of the City's authorities from removing any memorials for any war or conflict, including the Monument, and purports to prohibit the City and its City Council from removing the Monument from its current location and from interfering with the Monument.

17.     The Protection Statute requires that the owner of a memorial to any war or conflict must permit any citizen to access and exercise control over the memorial in order to properly protect, preserve, and care for it and prohibits the owner from excluding such citizen caretakers. This statute does not define which means of protection, preservation, and care are "proper."

18.     Virginia Code § 15.2-1812.1 (hereinafter the "Civil Remedy Statute") creates a private right of action to seek money damages in the event a memorial for any war or conflict is "violated or encroached upon."  This statute does not define "violated" or "encroached upon." This

right of action may be commenced by any person with an interest in "the matter" in the event that that attorney for the locality, including the City Attorney for the City of Norfolk, does not take any action for 60 days following a violation or encroachment upon the Monument. The statute does not define "the matter."

19.     The Civil Remedy Statute empowers the court to award punitive damages to a plaintiff in a private cause of action brought against any person who "unlawfully" removes a memorial for any war or conflict or who places "improper markings" on such a memorial, including the Monument. This statute does not define what sorts of removals are unlawful and which are lawful, nor does it define what sorts of markings are improper and which are proper.

20.     Virginia Code § 18.2-137 (hereinafter the "Criminal Penalty Statute") makes it a crime to unlawfully remove any memorial for any war or conflict, including the Monument. The Statute does not define which types of removals are unlawful such that a person will be exposed to criminal punishment. This statute does not define what sorts of removals are unlawful and which are lawful.

21.     A violation of the Criminal Penalty Statute is punishable as a class 6 felony in the event that it involves damage to a memorial or monument of $1,000 or more.

**COUNT ONE: UNLAWFUL RESTRAINT ON FREE SPEECH**

22.     The Protection Statute only applies to memorials for any war or conflict, or any battle in any war or conflict. It does not apply to other forms of visual speech besides memorials, nor does it apply to memorials to other persons or historical events other than battles and wars. Furthermore, the Protection Statute prohibits adding any Union markings to a Confederate memorial but does not prohibit adding Union markings to memorials related to wars other than the

War Between the States nor does it prohibit adding Union markings to Union memorials related to the War Between the States.

23.     The provisions of the Protection Statute that prohibit the City and its City Council from moving or interfering with the Monument are content-based regulations.

24.     The Protection Statute is a mechanism by which the Commonwealth compels the City to continue to project the message embodied by the Monument, indefinitely and without any interruption, diminution, or alteration, in its current location.

25.     The City and its City Council have a right to free speech, which right is protected by the Constitutions of both the United States and the Commonwealth of Virginia.

26.     By a unanimous resolution adopted on August 22, 2017, the City Council has expressed its desire to modify the speech and message embodied by the Monument by relocating it away from its current location at the intersection of East Main Street and Commercial Place to a new location at a public cemetery in another part of the City.

27.     The City and its City Council have been unable or unwilling to relocate the Monument out of uncertainty that the prohibition contained in the Protection Statute would make such an act unlawful and subject them to prosecution under the Civil Remedy Statute or the Criminal Penalty Statute.

28.     The Protection Statute contains a content-based prohibition that operates to compel the City and its City Council to continue to indefinitely present a particular message, through the Monument, at a location that neither of them now wants to, in violation of their constitutional right to free speech.

29.     Furthermore, the content-based prohibition in the Protection Statute is not narrowly tailored to protect a compelling interest of the Commonwealth, since the Commonwealth has no

compelling interest in forcing others to speak so that particular messages about wars and battles will be presented using physical memorials located in the same, fixed locations where they have always existed from the original date of their installation.  More specifically, the Commonwealth has no compelling interest in forcing the City or its City Council to depict a message about the War Between the States at the intersection of East Main Street and Commercial Place indefinitely, wherefore the Protection Statute fails strict scrutiny and violates the constitutions of both the United States and the Commonwealth of Virginia.

### COUNT TWO:  OVERBROAD LIMITATION ON FREE SPEECH

30.     The Monument is located in a public place on a public street where it is not unlawful for people to walk around it, approach it, and touch it.  Furthermore, efforts that might be undertaken to implement proper means for the protection, preservation, or care of the Monument often require that workers touch, scrape, scrub, clean, and alter various parts of it.

31.     On the morning of Monday, May 21, 2017, City staff learned that the Monument had been vandalized when spray paint with the message "SHAME" was applied to it.  Later that day, City staff used cleaning agents and chemicals to attempt to remove the painted message and, in order to do so, touched, scraped, scrubbed, cleaned, and removed portions of the surface of the Monument.

32.     On the afternoon of Wednesday, August 16, 2017, City staff learned that the Monument had been vandalized when chalk with the messages "TAKE IT DOWN," SHAME," and "Love Always Wins" was applied to it and paper with photos and the message "ANTI RACIST" was somehow adhered to it.  Later that day, City staff used cleaning agents to attempt to remove the messages and, in order to do so, touched, scraped, scrubbed, cleaned, and removed portions of the surface of the Monument.

33.     On the morning of Monday, October 16, 2017, City staff learned that the Monument had been vandalized when spray paint with the message "#2 BETTER LUCK NEVER" was applied to it.  Later that day, City staff used cleaning agents and chemicals to attempt to remove the painted message and, in order to do so, touched, scraped, scrubbed, cleaned, and removed portions of the surface of the Monument.

34.     Each of the City's cleaning activities undertaken after these three instances of vandalism appear to constitute an encroachment upon the Monument which could expose the City to civil liability under the broad and vague provisions of the Civil Remedy Statute.

35.     While the City Council has expressed its desire to move the Monument to a location where it would be less likely to be violated or encroached upon, such as a public cemetery, the possibility of liability under the Civil Remedy Statute and the Criminal Penalty Statute have chilled its willingness to do so, even though it believes it has a constitutional right to move the Monument and to discontinue presenting the Monument's message related to a war or conflict, namely the War Between the States, at the specific location where its currently stands.

36.     The City and its City Council are unable or unwilling to relocate the Monument out of uncertainty that they may be held liable under the Civil Remedy Statute for compensatory damaged resulting from a lawful removal or for both compensatory and punitive damages resulting from an unlawful removal.  The inherent vagueness in the Civil Remedy Statute makes it impossible for the City or its City Council to know what acts may result in civil liability for punitive damages.

37.     The City and its City Council are unable or unwilling to relocate the Monument out of uncertainty that they may be punished under the Criminal Penalty Statute resulting from an unlawful removal.  Such action may be punished as a felony since the process of relocating the

Monument is likely to cost at least $1,000 and may result in damage to the property upon which the Monument is located of at least $1,000.  The inherent vagueness in the Criminal Penalty Statute makes it impossible for the City or its City Council to know what acts may result in criminal prosecution and conviction.

38.     The City's acts taken in preservation and protection of the Monument by repeatedly removing the words and images applied by vandals in 2017 may be considered encroachments upon the Monument, thereby exposing it to possible liability under the Civil Remedy Statute. Because the statute is inherently vague as to what constitutes an encroachment, the City is less likely to respond promptly to future acts of vandalism of the Monument out of fear that certain restoration efforts might expose it to liability under the Civil Remedy Statute.

39.     Furthermore, the City Council has expressed its desire to relocate the Monument to a location that is less visible to residents, businesspeople, visitors, and tourists and where it is less likely to be targeted by vandals but is unwilling to do so as long as the prospect that it will be held liable pursuant to an action filed under the Civil Remedy Statute or will be punished pursuant to a prosecution under the Criminal Penalty Statute remains. Because these statutes are inherently vague as to what constitutes an "unlawful removal" and—by implication—whether the statute can be used to impose civil liability or criminal punishment for a lawful removal, the City is unwilling or unable to relocate the Monument to a public cemetery where it would be less likely to be vandalized.

### COUNT THREE:  VIOLATION OF SUBSTANTIVE DUE PROCESS

40.     The right to speak and the right not to be compelled by the government to speak in support of content that the government endorses are fundamental civil liberties deeply rooted in

the history of this Nation that are protected by the Due Process clause of the United States Constitution.

41.    The right to exclusive possession, including the right to exclude all others from touching or interfering with one's property, is a fundamental property right deeply rooted in the history of this Nation that is part of the bundle of property rights protected by the Due Process clause of the United States Constitution.

42.    The City and its City Council are endowed with both the fundamental right to speak about wars and conflicts, including the War Between the States, and the fundamental right to not be compelled to present a message about the War Between the States in the manner that is embodied by the Monument, indefinitely and without any interruption, diminution, or alteration, in its current location.

43.    The Protection Statute, Civil Remedy Statute, and Criminal Penalty Statute, collectively and individually, deprive the City of the right to free speech by prohibiting making changes to the Confederate words and symbols displayed on the Monument and prohibiting adding any Union markings, which effectively takes away the City's right to change the message embodied by the Monument.

44.    The Protection Statute, Civil Remedy Statute, and Criminal Penalty Statute, collectively and individually, deprive the City of the right to free speech by prohibiting the removal of the Monument from its current location, which effectively takes away the City's right to not present a message about the War Between the States in the manner that is embodied by the Monument where it presently stands.

45.    The Protection Statute deprives the City of its right to exclude citizens from accessing and exercising control over the Monument for purposes of protection, preservation, and care, which effectively takes away the City's right to exclusive possession of its property.

46.    Because the Protection Statute is inherently vague as to what actions that a citizen must be allowed to take in order to protect, preserve, and care for the Monument constitute "proper means," the City is less likely to defend the Monument against encroachments by citizens and to protect its right to exclusive possession out of fear of incurring civil liability under the Civil Remedy Statute and criminal prosecution under the Criminal Penalty Statute.

47.    The Protection Statute, Civil Remedy Statute, and Criminal Penalty Statute, collectively and individually, are not narrowly tailored to serve any compelling state interest.

48.    Based on all of the foregoing allegations and reasons, the Protection Statute, Civil Remedy Statute, and Criminal Penalty Statute, collectively and individually, are unconstitutional under both the United States Constitution and the Virginia Constitution, wherefore the City and its City Council pray that they be declared void and unenforceable.

## STATEMENT OF RELIEF REQUESTED

49.    The City and its City Council hereby request that this Court:

(a)    Enter a declaratory judgment that the Protection Statute, the Civil Remedy Statute, and the Criminal Penalty Statute violate the free speech clause of the First Amendment, the due process clause of the Fourteenth Amendment, and the freedom of speech protections in Article I § 12 of the Virginia Constitution;

(b)    Enter a permanent injunction prohibiting the Commonwealth, the Commonwealth's Attorney for the City of Norfolk, and any other person

with an interest in the matter from enforcing any of the remedies or punishments authorized by the Protection Statute, the Civil Remedy Statute or the Criminal Penalty Statute;

(c)     Award nominal damages for the violations of constitutional rights alleged herein;

(d)     Award attorney's fees, costs, and reasonable expenses, pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other relief as the nature of the case and the Court deem just and proper.

Dated:  August 19, 2019

**CITY OF NORFOLK**

_____/s/_____
Adam D. Melita
Virginia bar number 41716
Attorney for City of Norfolk
City Attorney's Office
810 Union Street
Norfolk, VA 23510
Phone: 757-664-4366
Fax:  757-664-4201
adam.melita@norfolk.gov
*Counsel for the plaintiffs*